IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs February 12, 2020

**HAROLD D. DOSS, JR., AND JOHNATHAN LAMAR HATHAWAY v.
STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2010-D-3315     Mark J. Fishburn, Judge**

_____

**No. M2019-00238-CCA-R3-PC**

_____

Harold D. Doss, Jr., and Johnathan Lamar Hathaway filed separate petitions for post-conviction relief. Because Petitioners were tried together, the post-conviction court conducted a single post-conviction hearing and denied relief as to both Petitioners. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

David M. Hopkins, Murfreesboro, Tennessee, for the appellant, Harold D. Doss, Jr., and Kara Everett Bellar, Carthage, Tennessee, for the appellant, Johnathan Lamar Hathaway.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

This case arose from the October 2010 robbery and shooting of Jiro Kanazawa, the victim, who was found dead in Room 118 of America's Best Value Inn in Nashville, Tennessee. *State v. Harold D. Doss, Jr., and Johnathan Lamar Hathaway*, No. M2012-

02201-CCA-R3-CD, 2014 WL 2592736, at *1 (Tenn. Crim. App. June 10, 2014), *perm. app. denied* (Tenn. Oct. 15, 2014).

Metropolitan Police Department Officer Isaac Wood testified that on October 5, 2009, he was dispatched to America's Best Value Inn. Officer Wood entered the motel Room 118 and observed the deceased victim lying on the floor. *Id.* at *3. He obtained an address for the person who rented the room from the motel registration form and proceeded to the address, which was associated with Petitioner Doss, but was not able locate the suspect. *Id*. at *9. Detective Wood then obtained bank records for the victim's accounts and was able to trace transactions to a Mapco convenience store and an Exxon convenience store. He obtained video surveillance footage from both stores. In one of the videos, a female and male could be seen walking out of the store, and the victim's vehicle could be seen driving away. *Id.* at *9. Detective Wood obtained still photographs from the video footage and released them to news media. He received a phone call identifying the female from the surveillance video as Courtney Hambric. *Id.* at *10.

The police picked up Ms. Hambric. She identified Christopher Doss and both Petitioners in a photographic lineup and assisted detectives in recording a telephone call with Christopher Doss, in which he told her "to stop telling people what had happened" and "this is something that [they] should take to the grave." At trial, Detective Wood was able to identify Courtney Hambric and Christopher Doss in the videos played for the jury.

Courtney Hambric testified that she worked as an escort and received a telephone call from the victim inquiring about her "rates." Ms. Hambric explained that she was unavailable because she did not have transportation to meet the victim. About an hour later, Christopher Doss called Ms. Hambric, and she asked him to give her a ride to "get a room" in order to meet with the victim. She called the victim and arranged to meet at America's Best Value Inn. Christopher Doss and Petitioners picked up Ms. Hambric. On the way to the motel, Christopher Doss indicated that they were going to rob the victim. Petitioner Doss rented Room 118. Petitioner Doss hid in the bathroom, Petitioner Hathaway hid behind the door, and Christopher Doss remained in the vehicle. When the victim entered the room, Petitioner Hathaway stepped out and pointed a gun at the victim. After getting the victim's billfold and car keys, Petitioner Doss made the victim give him the PIN numbers for two ATM cards. Petitioner Doss told Ms. Hambric to go with Christopher Doss and Petitioner Hathaway in the victim's car to get money. After obtaining a total of $600.00 from two locations, they returned to the motel. She and Petitioner Hathaway got back into Christopher Doss's vehicle. Petitioner Doss came out of the motel room and got into the vehicle. As they drove away, Petitioner Doss said he shot the victim three times because he tried to escape. *Id.* at *4-8.

- 2 -

Petitioner Doss fled to Texas where he was arrested in March 2010. The police were ultimately able to locate Petitioner Hathaway. They obtained fingerprints from Petitioner Hathaway which they were able to match with a thumbprint obtained from an interior door of Room 118. Michael Frizzell, a TBI special agent in the technical services unit, testified "that [he] helped prepare the visual presentation in this case as a testimonial aid for a particular [C]ricket phone number." He explained that he used a cell tower map for Davidson County that included information from the "call detail records" of the Cricket phone and the locations of the Mapco convenience store, Exxon convenience store, and America's Best Value Inn at issue in this case. Detective Russell Thompson testified that the locations of the cell towers used to route calls were consistent with Ms. Hambric's version of the events and Laquisha Hughes's statements that Petitioner Doss spent the night at her home. *Id.* at *12-16.

Following the trial, a jury convicted Petitioner Doss of first degree felony murder, second degree murder, especially aggravated robbery, and especially aggravated kidnapping. The trial court sentenced Petitioner Doss to life plus thirty years. The jury convicted Petitioner Hathaway of first degree felony murder, especially aggravated robbery, and especially aggravated kidnapping. The court sentenced Petitioner Hathaway to life. The judgments of the trial court were affirmed on direct appeal. *Id*. at * 1.

### *Post-conviction Petitions*

On January 16, 2015, Petitioner Doss and Petitioner Hathaway filed separate pro se petitions for post-conviction relief. After appointment of counsel for each Petitioner, amended petitions were filed. The post-conviction court held a joint hearing and issued a consolidated order addressing the issues raised in both petitions and denying relief to both Petitioners.

### *Issues Raised on Appeal*

On appeal, Petitioner Doss claims the post-conviction court erred in dismissing his petition because trial counsel was ineffective for (1) failing to object to the introduction of a letter written by Petitioner Doss and agreeing instead to redaction of parts of the letter, (2) failing to obtain an independent cell phone tower expert, and (3) failing to raise jury misconduct on appeal.

Petitioner Hathaway claims that the post-conviction court erred in dismissing his petition because trial counsel was ineffective in (1) failing to regularly meet with him and establish an appropriate attorney-client relationship, and (2) failing to properly advise him whether or not to testify. He also claims the cumulative effect of the two deficiencies listed above justify relief.

Although all claims in the petitions were addressed by the post-conviction court and denied, we will limit our discussion of the proceedings in the post-conviction court to matters relevant to the issues raised on appeal.

### *Post-conviction Hearings*

Petitioner Doss testified that he was incarcerated for approximately one year before trial and that could not remember how many times he met with trial counsel. He claims counsel's performance was deficient because he failed to object to introduction of a letter Petitioner Doss wrote after he was arrested in Texas. Concerning the letter, Petitioner Doss claimed that the letter was "just talking about family" and talked about him making some "mistakes." He said the letter had nothing to do with his case. On cross-examination, he admitted that he could not recall if trial counsel objected to the letter being introduced. He said that he did not remember the letter found on his person referencing the fact that he was "on the run." He conceded that the letter may have been relevant to the issue of flight.

Petitioner Doss claimed that the State introduced an expert in cell towers, whose testimony placed him or some of the co-defendants near the location of the murder, and that trial counsel should have retained an expert to rebut that testimony. In support of this claim, he testified, "I feel like that we should get [a cell phone tower expert] because, in effect, the State did theirs and we should get one because the State did not do the ground work on it." He could not remember if he discussed getting an expert with trial counsel.

Petitioner Doss claimed that it "came out" after trial that the trial judge and one of the jurors knew each other. He said that trial counsel should have raised jury misconduct on appeal. During cross-examination, Petitioner Doss admitted that he did not know if trial counsel had raised the jury misconduct issue on appeal.

In response to several questions posed during cross-examination, Petitioner Doss avoided answering by stating, "What I said earlier to my lawyer, that's what it was" or something to that effect.

Trial counsel was retained by Petitioner Doss's family. Counsel testified that he was licensed to practice in 1980 and served as an Assistant District Attorney and then an Assistant United States Attorney prosecuting federal crimes, first in Florida and then in Tennessee. In 1990, he went into private practice as a criminal defense attorney in both state and federal courts. When asked to estimate the number of criminal cases that he had handled, counsel stated: "That would be very difficult. I'm a very busy lawyer and I've

handled many, many, many federal and state criminal cases and tried many, many, many state and federal criminal cases." He said he had prosecuted and defended homicide cases. When asked if he had "received multiple awards" for his "work as a defense counsel," he responded, "I have."

Trial counsel testified that he represented Petitioner Doss from February 10, 2010, through a petition for Writ of Certiorari to the United States Supreme Court which was denied on or about June 26, 2015. According to his records, counsel met with Petitioner Doss at the detention center thirty-three times before trial and another seven or eight times during the appeals.

Trial counsel filed a motion *in limine* seeking to exclude the cell tower evidence which the trial court denied. He said that he was, however, able to bring out through cross-examination of the State's expert that the locations provided from the cell phone tower vary "anywhere from a half a mile to two or three miles" and that cell phones do not always connect to the closest cell tower. Counsel testified that after the release of certain federal cases concerning cell towers, he filed a petition to rehear with our supreme court.

Trial counsel said that he received the letter, which Petitioner claimed was not relevant, as part of the State's discovery. He said the State intended to introduce the letter to prove Petitioner Doss's flight to Texas. Counsel objected to introduction of the letter, and the trial court held a jury-out hearing. Counsel said that it became apparent that the trial court was going to admit the letter, so he focused on having the letter redacted to "take out the things that [he] thought were particularly harmful[.]"

Trial counsel testified that he raised jury misconduct in his motion for new trial. The trial court granted counsel for Petitioner Hathaway and him permission to talk to the jurors. He said that they interviewed all jurors and determined that the issue was not meritorious, so he decided not to raise the issue on appeal.

Over the objection of post-conviction counsel for Petitioner Hathaway, trial counsel for Petitioner Doss was found to be qualified as an expert in criminal defense. Counsel opined that counsel for Petitioner Hathaway was "extremely effective, and . . . did an excellent job at trial."

Petitioner Hathaway testified that he was arrested in December 2010 and that he initially hired private counsel to represent him. His original counsel met with him and provided discovery. Trial counsel was retained in March 2011 after Petitioner Hathaway dismissed original counsel. When led without objection during direct examination, Petitioner Hathaway agreed that trial counsel did not explain the essential elements of the

offenses, direct and circumstantial evidence, that a co-defendant would be testifying against him, criminal responsibility, or the evidence the State planned to introduce. He said that trial counsel did not go over the discovery with him and that he was not ready for trial. He said that his first significant meeting with trial counsel was a late-night, 107-minute meeting on the night before trial. He claimed that the first time trial counsel talked to him about his right to testify or not was on the morning of the trial. He stated that trial counsel did not object to testimony or to "inflammatory statements" during the State's closing argument. During cross-examination, Petitioner Hathaway identified a signed waiver of his right to testify. He could not remember discussing it with trial counsel or being put under oath and questioned during the trial about his right to testify or not testify.

Trial counsel for Petitioner Hathaway testified that he had been practicing law for twenty years and had handled hundreds of criminal defense cases, including "at least thirty" homicide cases. He met with Petitioner Hathaway shortly after he was retained. He said that he had already gone over some general things with Petitioner Hathaway over the phone. He said that, at the first meeting, he went over Ms. Hambric's statements to the police, the theory of criminal responsibility, the cell tower information, the essential elements of the charged offenses, and the applicable range of punishments. Counsel received additional discovery, including information that Petitioner Hathaway's thumbprint was found on the inside of the door to Room 118. He discussed this with Petitioner Hathaway and, based on what Petitioner Hathaway told him, formulated a trial strategy to claim that the print was left when Petitioner Hathaway went to Room 118 to sell drugs to Ms. Hambric. He said that he spent a lot of time with counsel for Petitioner Doss working on trial strategy. He said that he visited the jail to see Petitioner Hathaway a second time in March or April, again in October, and again about a week before trial. He said that he spoke to Petitioner Hathaway by phone and kept Petitioner Hathaway's mother up to date on developments. He said that he talked to Petitioner Hathaway about his right to testify or not testify both before and at trial.

On February 4, 2019, the post-conviction court issued a thirty-four page Memorandum Opinion, recapping the testimony and making numerous findings of fact. Concerning Petitioner Doss, the post-conviction court found:

1. Petitioner Doss retained trial counsel at trial and appeal.

2. [Petitioner Doss] did not make bond while his trial was pending.

3. [Petitioner Doss] and his attorney discussed discovery, strategies, and defenses many times.

- 6 -

4. The court did give a jury charge regarding accomplice testimony.

5. Trial counsel for [Petitioner] Doss had [thirty] years of experience as a criminal attorney at the time of trial.

6. Trial counsel met with his client at least [thirty] times prior to trial and several times while the appeal was pending.

7. Trial counsel interviewed several people related to co-defendant Hambric who was going to testify for the State at trial.

8. The court denied trial counsel's motion to exclude from evidence Petitioner Doss'[s] letter.

9. A *White* instruction was not requested during the trial because that opinion had not yet issued. The *White* issue was addressed at the motion for new trial and on appeal.

10. Trial counsel did not address all of the issues on appeal that he raised in his motion for new trial.

11. The issue of potential juror bias was litigated by trial counsel. The court did not find any bias.

12. Trial counsel did not hire an expert regarding the phone records because he felt the issue was covered favorably by the statement from the phone provider.

Concerning Petitioner Hathaway, the post-conviction court found:

1. Petitioner [Hathaway] was represented by retained [trial counsel].

2. The jail records show that trial counsel met with [Petitioner] Hathaway [three] times at the jail before his trial. It does not reflect how many times and for how long they spoke at his court dates.

3. Trial counsel met with Petitioner Hathaway for almost [two] hours on the eve of his trial.

4. Petitioner Hathaway did not feel prepared to go to trial.

5. Petitioner Hathaway signed a waiver of his right to testify at trial.

6. At the time of trial, trial counsel had been a criminal defense attorney for over [twenty] years. He had tried at least [fifteen] murder cases.

7. Trial counsel discussed the charges, the range of punishment, criminal elements, criminal responsibility, and the evidence with Petitioner [Hathaway].

8. The strategy at trial was to claim that Petitioner [Hathaway] was only at the crime scene to sell drugs to [Ms.] Hambric.

9. Petitioner Hathaway's fingerprints and DNA were found at the crime scene.

10. Trial counsel for Petitioners worked together on several aspects of the case.

11. Petitioner Hathaway chose not to testify due to his numerous convictions.

12. Trial counsel for [Petitioner] Hathaway did not hire an expert on the cell phone tower evidence as they were not contesting Petitioner [Hathaway]'s presence at the crime scene.

13. A jury charge was given on accomplice testimony.

14. An instruction pursuant to *State v. White* was not requested as the case had not yet been decided at the time of this trial.

15. Trial counsel for [Petitioner] Hathaway joined in objecting to the District Attorney's closing argument made by counsel for [Petitioner] Doss.

The post-conviction court addressed all issues raised in both petitions. Concerning the issues raised by Petitioner Doss on appeal, the post-conviction court determined:

**Failure to object to introduction of letters.**

Petitioner [Doss] alleges that his attorney should have moved to exclude letters found on his person when he was arrested in Texas. Although Petitioner [Doss] alleges the letters harmed his case, he offers no evidence

to show, precisely, how he was prejudiced by their introduction. The letters were redacted to omit references to prior jail time, and, as the State pointed out at the hearing, Petitioner [Doss] referred to himself as being "on the run" in those letters. This reference was legitimately relevant to the issue of flight. The Petitioner is not entitled to any relief on this issue.

### Failure to raise the issue of potential juror bias.

[Petitioner Doss] alleges that his attorney did not object to the fact one of the jurors had an acquaintance with the trial judge. At hearing, trial counsel testified that this issue was raised in the motion for new trial, and that based on that motion the court held an evidentiary hearing regarding potential juror bias. After the hearing, the court found no misconduct had occurred. This issue is without merit.

### Failure to engage the services of an expert on cell tower transmissions.

Finally, Petitioner Doss alleges counsel was ineffective because he did not retain an independent expert who could testify on the cell phone tower transmission evidence. At the post-conviction hearing, trial counsel testified that he had filed a motion to exclude testimony regarding cell phone tower transmission, and the motion was denied. He also testified that during trial he was able to point out to the jury that cell phone towers are not reliable locators of persons. Further, he believed that the statement provided by the cell phone provider was actually favorable to his client. Besides, a petitioner who claims ineffective assistance of counsel based on a failure to call a witness must bring in a witness to testify at the post-conviction hearing, for it is not the trial court's prerogative to speculate as to what the witness would say. *State v. Black*, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990). Petitioner has not shown that trial counsel was deficient in this area.

Concerning the issues raised by Petitioner Hathaway on appeal, the post-conviction court determined:

### Failure to investigate.

Petitioner Hathaway alleges his trial counsel was ineffective for failure to investigate the facts of his case. However, in his petitions and at hearing, Petitioner [Hathaway] failed to put forth any evidence to show any additional favorable evidence that would have been uncovered had trial

counsel conducted any further investigation. Trial counsel testified that he had reviewed the discovery in this matter, reviewed the evidence; and he conferred with co-defendant counsel who had already done extensive investigation into and conducted interviews with potential witnesses. Petitioner [Hathaway] has not shown trial counsel to have been deficient in this matter.

### Failure to meet regularly with Petitioner [Hathaway] and failure to properly advise Petitioner [Hathaway] regarding his right to testify at trial.

Petitioner [Hathaway] claims that trial counsel was ineffective because he did not meet with him on a more frequent basis and because of that, he failed to establish the attorney-client relationship that would have been necessary to properly represent him. Petitioner [Hathaway] claims that he was never properly informed as to the evidence against him, trial strategy, trial procedure, his right to testify, and the law involved in his case. Petitioner [Hathaway] alleges his trial counsel met with him in jail only [three] times prior to trial. The jail records appear to support this assertion.

The small number of jail visits to Petitioner [Hathaway] is troubling, especially considering the severity and complexity of Petitioner [Hathaway]'s charges. Effective communications between the attorney and the client are the hallmark of the attorney-client relationship for obvious reasons. A client's belief that his or her attorney is acting in the client's best interest is not [] innately instilled in defendants, but is the product of adequate and effective communications. If a defendant does not trust the attorney then meaningful communications are unlikely. Well-informed trial strategies cannot be developed absent adequate and effective communication, and decisions only the defendant can make may be involuntarily or unintelligently conceived.

However, the jail records do not reflect the phone calls between Petitioner [Hathaway] and his attorney. Although the content of these conversations may have been intentionally limited, they were not devoid of substantive discussions. Likewise, documented jail visits do not account for how many meetings they may have had at Petitioner [Hathaway]'s court dates. Trial counsel testified that he discussed all aspects of the case with Petitioner [Hathaway] and that Petitioner [Hathaway] understood the nature of the charges against him, the applicable law, and his rights as a criminal

defendant. He testified that their trial strategy was to acknowledge Petitioner had been at the crime scene, but only to sell drugs to Ms. Hambric. This approach was reasonable considering the forensic and other evidence that placed Petitioner [Hathaway] at the scene. Additionally, trial counsel testified that he discussed the pros and cons of testifying with Petitioner [Hathaway], and that Petitioner [Hathaway] chose not to testify due to his numerous criminal convictions. Finally, trial counsel was able to obtain significant insight into the strengths and weaknesses of the State's case through the shared investigative undertakings of counsel for the co-defendant.

The court is troubled by the lack of documented communications that occurred between Petitioner [Hathaway] and trial counsel. However, the court accredits the testimony of trial counsel that Petitioner [Hathaway] was adequately and properly aware of the law and the evidence applicable to him and the case. Therefore, the court finds that this issue is without merit. Assuming, arguendo, that Petitioner [Hathaway] had shown counsel was deficient in this area, he has failed to submit to the court any evidence to establish how he was prejudiced by the insufficiency of the communications.

Following issuance of the post-conviction court's Memorandum Opinion, both Petitioners filed a timely notice of appeal. This court ordered the appeals consolidated unless Petitioners objected, which neither did.

## Analysis

### *Standard of Review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Tenn. Code. Ann. § 40-30-110(f); *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40

- 11 -

S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### *Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

Regarding claims of ineffective assistance of counsel on appeal, our supreme court has provided:

> Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. Indeed, experienced advocates have long emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues. The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference.

*Carpenter*, 126 S.W.3d at 887 (internal quotation marks and citations omitted).

When a petitioner alleges that counsel was deficient for failing to raise an issue on direct appeal, the reviewing court must determine the merits of that issue. *Id.* "Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." *Id.* Further, when an omitted issue is without merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal and cannot prevail on an ineffective assistance of counsel claim. *Id.* at 887-88. Counsel's professional judgment is entitled to considerable deference with regard to which issues best served the petitioner on appeal. *Id.* at 887.

### Claims of Ineffective Assistance of Counsel Raised by Petitioner Doss

*Failure to Object to a Letter Written by [Petitioner] Doss*

Trial counsel did object to the letter being introduced. When counsel determined during the jury-out hearing that his objection was going to be denied, he made a strategic decision to seek redaction of the letter. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson,* 197 S.W.3d at 790. Petitioner Doss has completely failed to show that trial counsel's performance was in any deficient in his handling of the letter, and he is not entitled to relief on this issue.

*Failure to Obtain an Independent Cell Phone Tower Expert*

We agree with the post-conviction court that "[t]rial counsel did not hire an expert regarding the phone records because he felt the issue was covered favorably by the statement from the phone provider." We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Id.* Petitioner Doss is not entitled to relief on this issue.

*Failure to Raise Jury Misconduct on Appeal*

Trial counsel raised the issue of a juror knowing the trial judge in the motion for new trial. The trial court allowed counsel for both Petitioners to interview the jurors. Counsel interviewed all jurors and determined that the issue was not meritorious, so he decided not to raise the issue on appeal. This issue is without merit, and Petitioner Doss is not entitled to relief.

**Claims of Ineffective Assistance of Counsel Raised by Petitioner Hathaway**

*Failure to Regularly Meet*

Although the post-conviction court found the "small number of jail visits" troubling, the court noted a number of telephone calls between Petitioner Hathaway and counsel. The court found that trial counsel had been a criminal defense attorney for over twenty years and tried at least fifteen murder cases. The court also found that counsel "discussed the charges, the range of punishment, criminal elements, criminal responsibility, and the evidence with Petitioner [Hathaway]." The court accredited the testimony of trial counsel "that Petitioner [Hathaway] was adequately and properly aware of the law and the evidence applicable to him and the case." The court stated that "[a]ssuming, arguendo, that Petitioner [Hathaway] had shown counsel was deficient in this area, he has failed to submit to the court any evidence to establish how he was prejudiced by the insufficiency of the communications." We agree that Petitioner Hathaway failed to submit to the post-conviction court any evidence proving how he was prejudiced. Petitioner Hathaway is not entitled to relief on this issue.

*Failure to Properly Advise Whether or Not to Testify*

Trial counsel testified that he explained to Petitioner Hathaway, both pretrial and at trial, his right to testify and his right not to testify. Petitioner Hathaway signed a waiver of his right to testify as part of the *Momon* hearing after the State presented its proof. Petitioner Hathaway failed to submit to the post-conviction court any believable

proof that he was not advised about his right to testify or not testify.  We agree with the post-conviction court that the issue is without merit.

*Cumulative Effect of the Deficiencies*

Petitioner Hathaway has failed to prove any deficiencies, so there is no cumulative effect.  Petitioner Hathaway is not entitled to relief on this issue.

**Conclusion**

The judgment of the post-conviction court denying relief as to Petitioner Doss and Petitioner Hathaway is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE